26 APPELLATE COURTS OF ILLINOIS.

Mexican Import Co. v. Pennsylvania R. Co., 193 Ill. App. 26.

Mexican Import Company, Appellant, v. Pennsylvania Railroad Company et al., Appellees.

Gen. No. 20,811. (Not to be reported in full.)

Appeal from the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed June 4, 1915.

## Statement of the Case.

Action by Mexican Import Company, a corporation, plaintiff, against Pennsylvania Railroad Company, a corporation, Pennsylvania Company, a corporation, and Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, a corporation, defendants, to recover damages occasioned by reason of defendants' alleged failure to exercise proper care in the handling and transportation of two carloads of tomatoes, and by reason of alleged unreasonable delay in the transit thereof, whereby the freight was either chilled or frozen.

From a judgment for defendants entered on a verdict directed on their motion, plaintiff appeals.

The defendants filed a joint affidavit of merits denying that the damage, if any, to the tomatoes was occasioned by any failure on their part to exercise proper care while the same were in their possession and control, or that there was any unreasonable delay in the transit of the same, and alleging that if the freight was damaged, the damage was incurred prior to the time of delivery to the defendants, and that the freight was delivered to the consignee in the same condition as when delivered to the defendants.

Plaintiff's evidence disclosed the following facts in substance: Refrigerator car "P. F. E. 10026," loaded with tomatoes from Mexico and consigned to plain-

. Mexican Import Co. v. Pennsylvania R. Co., 193 Ill. App. 26.

tiff at Chicago, arrived in Chicago over the tracks of the Chicago, Rock Island and Pacific Railroad Company on Saturday evening, December 30, 1911, and was placed on a team track of said railroad company. On Sunday morning, one Davies, an inspector of fruit and vegetables and employed by plaintiff to examine the condition of the tomatoes, went to the team track with one Taylor, manager for plaintiff, and there met the foreman of the team track; the seal of the car was broken, one of the doors was opened, and Davies and Taylor went into the car. Davies testified in substance that he was inside the car from twenty to thirty minutes; that during all this time said door remained open; that it was "very cold," that the temperature was less than twenty degrees above zero, and that it was "awful windy;" that there was an alcohol-fed heater in the bunkers of the car, which raised the temperature of the car; that the tomatoes were loaded in boxes, each box containing four square baskets and each basket containing about fifteen or twenty tomatoes, each wrapped in paper; that there was space for ventilation between the tiers of boxes; that he examined the various boxes in the usual manner and saw about four or five per cent. of the load; that none of the tomatoes which he examined were chilled or frost-bitten; that from his examination he reached the conclusion that all of the tomatoes were in a good, merchantable condition and fit for shipment to New York City and other eastern markets; that upon coming out of the car he personally closed the door and said foreman put seals on the car; and that then the witness left and did not again see the car. Three days after said examination, on January 3, 1912, plaintiff gave orders through the Chicago office of the Pacific Fruit Express that said car be reconsigned to plaintiff at Philadelphia, Pennsylvania, and the car was started for that destination. On the afternoon of January 5, 1912, plaintiff telephoned the office of the

28     Appellate Courts of Illinois.

Mexican Import Co. v. Pennsylvania R. Co., 193 Ill. App. 26.

Pennsylvania Company in Chicago directing it to divert said car, then en route to Philadelphia, to "Mexican Import Company, New York City; notify Lyon Brothers, New York City." Plaintiff's evidence did not show that any further examination was made of the contents of the car until it reached New York City or what was the condition of the tomatoes when plaintiff gave said reconsignment order, or what was the temperature in Chicago from December 31, 1911, to January 3, 1912. The car arrived in New York City and was unloaded on the morning of January 8, 1912, at the piers of the defendant Pennsylvania Railroad Company. It was found that the tomatoes were greatly damaged, that those which had been near the doors of the car were frozen and that the others were badly chilled. Subsequently, the entire carload was sold for $43.15.

Refrigerator car "P. F. E. 3997," also loaded with tomatoes from Mexico and consigned to plaintiff at Chicago, was placed on a team track of the Chicago and Eastern Illinois Railroad Company in Chicago on January 24, 1912. Davies testified, in substance, that at the request of plaintiff he examined the contents of this car on January 24, 1912; that the temperature was then about twenty-four degrees above zero; that he was engaged in said examination from twenty to thirty minutes, during which time one of the doors of the car was open; that there was an alcohol-fed heater in the car which raised the temperature of the car; that he made an examination similar to that made of the contents of car No. 10,026, and found the tomatoes in good condition and fit for shipment to New York City. Two days thereafter, on January 26, 1912, plaintiff, through said Chicago office of the Pacific Fruit Express, reconsigned said car, No. 3,997, to "Mexican Import Company, New York City; notify Lyon Brothers Company." It does not appear that any further examination was made of the contents of this

Mexican Import Co. v. Pennsylvania R. Co., 193 Ill. App. 26.

car until it reached New York City and was unloaded on the morning of February 1, 1912; neither does it appear what was the condition of the tomatoes on January 26, 1912, or when the car reached the tracks of any of the defendants. When the car was unloaded in New York City some of the tomatoes were found to be badly chilled and damaged. The tomatoes were sold for $768.25.

Counsel for plaintiff did not contend that the shipments of said tomatoes, contained in said two cars, were continuous shipments from Mexico to New York City, but they stated in their reply brief: "When shipping directions were given by plaintiff for these cars at Chicago, to send them to New York, they were on the team tracks of the Chicago, Rock Island & Pacific and the Chicago & Eastern Illinois Railroads, respectively. Those railroads were the initial carriers in the transits to New York City, and they moved the cars from Chicago. to the next carrier en route." Counsels' position was that defendants were connecting and delivering carriers, that a sufficient prima facie case against them, as such carriers, was shown by the evidence, and that the court erred in instructing the jury at the close of plaintiff's case to find for the defendant.

Plaintiff's evidence did not disclose that there was any unreasonable delay in the transit of either car from Chicago.

CHARLES A. BUTLER, for appellant; FRANKLIN RABER, of counsel.

LOESCH, SCOFIELD & LOESCH, for appellees.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

## Abstract of the Decision.

1. CARRIERS, § 199*—*when connecting carrier presumed to have received freight in good condition.* The presumption is that goods which have been received by the initial carrier in good condition are received in a similar condition by each successive carrier up to the carrier making the delivery, and where the goods are in bad order upon delivery, the burden is on the delivering carrier to show that it provided proper means of transportation and exercised the degree of care which the goods required, or that the damage occurred before it received the goods.

2. CARRIERS, § 199*—*what burden on shipper in action against delivering carrier.* In an action by a shipper against the last of a series of carriers to recover for damage to freight, the burden is on him to show that the freight was in good condition when delivered to the initial carrier and that it was damaged when it arrived at its destination.

3. CARRIERS, § 139*—*when evidence insufficient to show that freight was in good condition on delivery to carrier.* In an action against the last connecting carrier for injury to a shipment of tomatoes, by freezing or chilling, evidence that one car of the shipment, which consisted of two cars, was examined two days before the delivery to the initial carrier, and the other three days before, is insufficient to raise the presumption that the freight was in good condition when delivered to the initial carrier, where it appears that the weather between the time of examination and the time of delivery was very cold and that the cars were opened for the examination.